It's 24992 Dwayne Mitchell v. New York City Department of Education. Thank you. Thanks. Thank you so much. Good morning, Your Honors. May it please the court, we believe that the district court has erred in applying something like a heightened pleading standard to Mr. Mitchell's complaint alleging age, race, and discrimination as well as retaliation and due process. Case law within this circuit is pretty clear in that a plaintiff alleging workplace discrimination, age discrimination, must give plausible support to a minimal inference of discrimination. Put another way, plaintiffs need only present minimal evidence to support their claims that as to the Fourth Amendment of the McDonnell-Douglas framework, that there are circumstances which give rise to an inference of discrimination. Mr. Mitchell has done so in our opinion. I've been shocked at why you keep saying we are in McDonnell-Douglas land. It seems to me that we have a case called Vega which clarified the interaction between the pleading standards and the McDonnell-Douglas and said that at the pleading stage, the only need to prove that an employer took an adverse action against him and that race, color, religion, sex, or national origin was a motivating factor in the employment decision. Is Vega bad law? Like I'm just stunned to see an employment lawyer citing McDonnell-Douglas at this stage. Well, McDonnell-Douglas specifically just coming from the Supreme Court weighs out that there's these circumstances which give rise to an inference of discrimination. Then when turning to Vega, I think Vega is important and useful and certainly good law as I'll get to a bit later, that Vega is useful in interpreting what gives rise to these circumstances which support an inference of discrimination. And Vega does so by actually in this case, it fits particularly well saying that you can have something like a mosaic and you can take bits and pieces of a comment here, indirect evidence there, indirect evidence here, and you can apply that to meet that fourth prong of McDonnell-Douglas. So I don't think that Vega is bad law and I don't think that we disregard McDonnell-Douglas. I think that Vega actually allows us to interpret that fourth prong of McDonnell-Douglas in that what is required to show a claim for discrimination. Going to and apropos to Vega, Mr. Mitchell has alleged comparators in his complaint. He has alleged pedagogical observations which clearly contrast the student performance and his apparent teaching ability. And he also has a lack of support for his teaching. Notwithstanding this, he was still able to pass 95% of his region's students and multiple students were able to obtain scholarships, two of which. So can I ask back to your comparators, those are Mr. Coppola and Mr. Mason. Yes. Say that we agree that they've not, that you have not at this time adequately alleged that they are appropriate under a disparate impact theory. Are there additional facts that you could provide that would establish them? For example, do you have titles, responsibilities? Were you able to show that they specifically replaced him in social studies? I think that part of our question is that part of our answer would be that discovery would yield some of this information. I believe the complaint itself actually laid out that these were probationary teachers. They are rated using the Danielson rubric or the highly effective, effective, developing,  They're rated along the same scale as to performance-based evaluations. And it's done so by the same school administration that works its way all the way up to the same superintendent. And so from the information that is pledged just in the complaint itself, I believe that that actually creates enough substance at the pleading stage, at the pleading stage to survive a 12B6 motion to dismiss. And at this stage, these comparators suffice to allow the complaint to proceed to discovery where some of your Honor's questions will be answered. And quite frankly, they can be answered affirmatively and helpful to Mr. Mitchell, or perhaps not helpful to Mr. Mitchell. But that is the purpose of allowing us to proceed to discovery on that point. In addition to just the comparators that we have cited, there's also information that after Mr. Mitchell, as well as the four other African-American older teachers, had left the school either by virtue of discontinuance or by virtue of taking it upon themselves to remove themselves from an environment like that, they were replaced by Hispanic younger teachers who served as their replacements at that time. And again, this goes back to the standard that we believe has been imposed here, in that they're saying, you've pleaded upon information and belief. You can go speak to colleagues. You can go speak to other individuals who may have information with regards to this. But we surmise that this is actually what discovery would allow Mr. Mitchell to do. And so in the court's decision, the district court's decision, and the report and recommendation, they're almost asking Mr. Mitchell to go on some quasi-discovery at the complaint stage. And again, we believe that it may not be absolutely these facts are in his favor, but to allow him to get to discovery would allow him to answer some of those questions that are being asked by the court at the 12B6 stage. Moving to his retaliation claims. Specifically, the court takes note of the fact that they believe he did not engage in what is known as protected activity. And this protected activity, they seem to narrowly construe as something like a complaint alleging discrimination to somewhere like the DHR, the EEOC, or things of that nature. However, courts in this circuit have also held that protected activity can be relatively informal complaints on a variety of bases. I think the first is Mr. Mitchell appealed his ineffective rating, an ineffective rating which he felt contrasted significantly with his student's performance. So wait a minute. I think maybe I want to make sure I understand what you just said. I understand the part that protected activity can include informal complaints. But it sounded like the second part of that is can include informal complaints about something other than purported violations of the statute pursued to which the retaliation claim arises. So saying you're wrong about assessing my ability to trigger a retaliation claim under Section 1981? Well, I think specifically to answer your question, Your Honor, it's the basis under which Mr. Mitchell was making those complaints and those grievances. So there are allegations that he said in the context of that appeal, I think that you've graded me harshly because of my race, or my age, or my gender. Your Honor, I cannot say specifically what those grievance procedures did. Mr. Mitchell does not actually complete them himself. They go through the UFT. But in order to be protected activity, we have to be able to look at the complaint and say that he's alleged that he engaged in protected activity. So I'm trying to figure out what allegation in the complaint tells us not only that he grieved the action, but that he raised a claim of discrimination in the context of that. Well, that is elsewhere in the complaint. It's not specific to exactly where you're talking about, Your Honor. No, it's everywhere it is in the complaint. That is, Your Honor, I don't have the complaint in front of me. We'll get a chance to hear from you again on the back side. So maybe you can look for that while we're... Well, specifically, Your Honor, in the complaint, when he alleges that he had filed these grievance as they purport to pedagogical observations he received, starkly contrasted with the performance of his students. It's there in the complaint that the basis for his grievance is that this could not have been based on my performance. Because if it was based on my performance, how could these students have performed at such a satisfactory and actually exceptional rate? But did the complaint go further and say, because this could not have been based on my performance, could mean anything. It could be because the principal has it in for me. Because we got to find the parking lot. I mean, there could be lots of reasons. And I'm wondering if I missed something in the complaint that ties it to what I would call protective. It could be like a complaint of race discrimination. No, Your Honor, you're correct in that. The complaint itself does not explicitly mention that he filed these grievances on the basis of this protective characteristic. If given an opportunity to amend, would he have allegations that would do that? I mean, is this a pro se pleading deficiency or is this just not what the record would reflect in any event? I certainly believe that it could be a pro se pleading deficiency as being at that time. He was proceeding pro se. I believe that he could, in good faith, allege that his basis for making that grievance or submitting that ineffective appeal was that, yes, his underlying- No, no, no, but it's not what he subjectively believes that makes it protected activity. It's what the decision makers who later take the retaliatory act are told, right? So you're not aware of any allegations he would be able to make to the effect of, I said to the principal, this must be race discrimination or you're discriminating against me because I'm old or something like that? Well, no, Your Honor, but that may have been taken apart in the DOE appeal hearing or the ineffective appeal hearing. That may have been discussed, again, specifically something that we don't have access to at the pleading stage, this ineffective hearing. Right, all right. Attorney Kerfman. May it please the court, Jeff Kerfman, on behalf of the Appalese. The district court properly dismissed Mitchell's amended complaint, including his claims for discrimination, retaliation, and a due process violation, which are the only three claims left at issue in this appeal. This court should affirm. To begin, Mitchell failed to state a claim for discrimination. He did not identify any statements suggesting animus and his reliance on comparators to show an inference of discrimination is insufficient because he did not plausibly allege that the comparators were similarly situated. No, no, no, I was gonna... Yeah, I'm looking at little, John, right? We're saying it's a low burden at the pleading stage and the fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the pleading stage. We don't typically, on a complaint, get into this whole comparator analysis that we do in certain judgment where we start digging into the details. Why isn't his allegation that he and the other older black men who left were replaced by younger Latino men, why isn't that enough? It's certainly, Your Honor. The panel in Boyer, in particular, focused on the fact that, first of all, little John did emphasize that comparators, even at the motion to dismiss stage, must be similarly situated in all material respects. And the panel in Boyer, in particular, focused on the fact that the plaintiff, that the comparator is alleged, did not have a similarly negative performance history to the plaintiff and that was material to the decision that they were not similarly situated. And that those were both 12B6 determinations? That's correct, Your Honor. And Boyer, in particular, was a pro se pleading as well. I'd also emphasize that, in addition to performance history, Mitchell did not allege that these comparators taught even a single common subject, which further diminishes the inference that this decision was motivated by. He alleged that they were replaced by, and the use of the term replaced by suggests to me that they're replaced by, not we got rid of three math teachers and hired two English teachers. That's not a replacement. Why isn't a reasonable inference in a pro se complaint that he did allege that they were replaced by these young people? Your Honor, the DOE hires teachers every year for many different subjects and they need to be certified to teach in those subjects. And this is an allegation on information and belief. The court has been clear that when pleading by information and belief, the pleadings have to involve information that's peculiarly within the possession of the defendants. So let me ask then, he was not able to amend a third time. Is your position that the deficiency is because he didn't provide enough substantiating facts or that he couldn't because it's not true? Are there no facts that he could put forward if given the opportunity to amend that would be substantial? Is there something about these two men that make them an insufficient comparator regardless of how it's played? Well, certainly we wouldn't dispute that if the plaintiff was able to come forward and demonstrate that, for example, DOE granted tenure during the same year to employees who had similarly negative performance evaluations to his, that could rise to that level. But we are on an amended complaint after having one opportunity. So I mean, are you asking us to understand futility as a party has after two tries and didn't make it, they're done or that they actually can't give us more? How do we understand futility, especially when we're dealing with someone who was per se the one? Well, a couple of points. Number one, we haven't even read Mitchell's briefs on appeal to be arguing that there should have been an opportunity to amend. He has not made the argument that the district court improperly did not grant that opportunity. But secondarily, he has had opportunities to come forward with relatively basic information showing that he is similarly situated to these employees in respects that are material. And he has not been able to come forward with that information. If I may move to the retaliation claims regarding his appeal of the ineffective rating and his complaints on behalf of his special education students. This court has held in cases such as Wimmer and Mullaney that protected activity is a complaint regarding conduct that is prohibited under the statute supplying the cause of action. Mitchell did not allege here that his appeal of his ineffective rating or his complaints on behalf of the students address conduct that he believed was prohibited under statutes that he has invoked. Further, with respect to his participation in the Gulino class and his complaints on behalf of his students, he failed to plausibly allege a causal connection with any adverse action with respect to those alleged protected activities. His claim for damages in the Gulino action came nine months before his June 2018 discontinuance, which is beyond any temporal level this court has recognized as suggestive of causation. And regardless, before both his claim for damages and the complaints on behalf of the students, gradual adverse actions had accumulated beforehand, which under slattery severs an inference of causation on that basis. If the court has no further questions on retaliation or due process, we'd ask that you affirm. Thank you. Thank you. Your Honor, I'd just like to start by responding to one point here with regards to the similarly situated. There's also case law which emanates from this court that the determination as to whether an individual is similarly situated in all material respects is a factual question. Also, during Counselor's argument, he has alluded to similar performance evaluations of other individuals and hiring preference of the DOE as things that he could allude to that would support or not support materiality similar in all material respects. These are things which are ripe for discovery. This is exactly what we believe discovery in these cases. Are you saying you're not obligated to at least allege who the similarly situated people are? No, Your Honor. And I believe Mr. Mitchell has actually alleged the similar situated people. He's alleged the names of the five other African-American older individuals who have either left or been discontinued. And he also alleged the names of the two individuals who received preferential treatment relative to those five individuals. And finally, he's also alleged, and he did not allege the specific names of those individuals, but he alleged that two Hispanic individuals were then promoted to the DOE probationary positions to replace some of the vacancies that were created. That's with respect to the similarly situated. Just going into the due process, because I believe this is a very important point to Mr. Mitchell. Some of the robust protections that tenured teachers receive emanate from Education Law Section 3020A. Education Law Section 3020A necessitates that the Department of Education has the burden of proof to prove that there is just cause to remove a teacher or otherwise impose discipline on a tenured teacher. The discontinuance appeal hearing that Mr. Mitchell was subjected to after his discontinuance in violation of 3020A, the burden is on him to prove that the Department of Education had no viable basis or their discontinuance was improper. The discontinuance appeal hearing that he received and the ones afforded to him via 3020A are starkly different. And so to say that he has received due process protections for these robust tenure protections by virtue of his. So usually when we think of due process issues, it's because it has things like a lack of notice, a lack of explanation, a lack of opportunity to present his side of the story. Did he allege any of that? Well, Your Honor, he did. He did not explicitly. Again, proceeding as pro se, he did not explicitly.  not being afforded a 3020A hearing where the standard is on the Department of Education to show that there's just cause supporting termination. But he was full-time probationary officer, is that right? Your Honor, he was classified as a full-time probationary teacher, which is why he did not get the 3020A. However, by virtue of his numerous years of service to the Department of Education as a full-time substitute, he has something which is known as JARIMA credit or credit that can be applied to actually shorten his probationary period. So it sounds like what you're making is what I would describe as a statutory claim. Although we use the term due process hearings sort of colloquially, whether or not something complies with constitutional due process is really subject to an analysis that doesn't turn on the particular statutory requirements. Am I misunderstanding? Is he making a statutory claim here? Well, the issue, Your Honor, it's a tricky question because tenure by estoppel is not actually anywhere in any statute. It's by virtue of the fact of continued consecutive- Right, but the scope of the hearings to which he said he would have been entitled had he gotten tenure by estoppel, that's defined by statute. If constitutional due process is met even by a more minimal set of procedures and you're saying he's entitled to more procedures because of tenure by estoppel, that sounds like a statutory argument. No, you're correct in that, Your Honor. So has he- Did you raise that argument in your brief? I do not believe- Well, we have made the- Specifically, what argument? The argument you just made. Did you raise that in your brief? We interpreted this argument as a procedural due process argument because he was not afforded the 3020A proceeding, which allows him this opportunity to present his evidence and the Department of Education's failure to provide evidence of a just cause. So no, Your Honor. We interpreted it as a due process claim as opposed to a per se statutory violation of educational law 3020A. Thank you. Thank you, Your Honor. I appreciate it. We'll take this under advisement. Thank you both for your arguments.